**IN THE CIRCUIT COURT**
**FOR BALTIMORE COUNTY**

JEFFREY B. COHEN,                            *
2419 Long Ridge Rd
Reisterstown, MD 21136                       *

    *Plaintiff*,                               *

v.                                           *   Case No.:

BANKERS STANDARD INSURANCE                   *
COMPANY d/b/a ACE PRIVATE RISK
SERVICES,                                    *
436 Walnut Street
Philadelphia, Pennsylvania 19106             *

Serve On:                                    *

    Therese M. Goldsmith                    *
    Maryland Insurance Commissioner
    Maryland Insurance Administration       *
    200 St. Paul Place, Suite 2700
    Baltimore, Maryland 21202               *

    *Defendant*.                            *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

**COMPLAINT**

Plaintiff, Jeffrey B. Cohen ("Plaintiff" or "Cohen"), *pro se*, hereby files this Complaint

against Defendant Bankers Standard Insurance Company ("Bankers"), an ACE Private Risk

Services company ("ACE") (collectively, "Defendants"), and in support thereof state as follows:

**INTRODUCTION**

1.    Plaintiff Jeffrey Cohen pays Defendant Bankers more than $50,000 annually in

insurance premiums for personal insurance that included coverage for a new luxury home.  Mr.

Cohen has been an insurance industry executive for more than a decade.  As such, Mr. Cohen

recognizes the value of insurance, and the important role that coverage plays in protecting

families from disaster.  Cohen agreed to pay an exorbitant sum for one year of coverage because he was not just buying insurance, he was buying peace of mind – so he thought.

2.      The Cohen new home was planned to be renovated when a small fire occurred in the garage.  The fire was contained in the garage, and caused a relatively small amount of damage when compared to the expanse of the main residence, which was untouched.

3.      Rather than adjust the claim, Bankers hired an attorney.  The Bankers adjuster made an inspection of the property and among other items, authorized the commencement of cleaning and mitigation services, and agreed to a payment of lost rental income.  Instead of honoring the express authority granted to the adjuster, Bankers referred the case to counsel, who has requested that Cohen and his Wife submit to examinations under oath and also requested a mountain of documents that have nothing whatsoever to do with the adjustment of a small garage fire claim.

4.      Bankers has not made a coverage determination, nor has it provided the regular updates that Title 31 of COMAR requires.  Cohen is thus left to assume that Bankers has drawn the entirely nonsensical conclusion that Cohen intentionally set the fire.  The owner of a million dollar home who is looking to commit insurance fraud is not going to start a small garage fire to recover repair fees that are likely to be well below the policy limits.  This case is a nuisance, not a windfall and a burden for Cohen due to the $10,000 deductible that must be paid.  And it is a nuisance that Cohen paid a substantial sum to avoid.

5.      To add insult to injury, Bankers renewed the Cohen policies during the adjustment of this claim, and accepted additional tens of thousands of dollars in premiums.  If Bankers believes that Cohen has committed fraud, then Bankers will likely not pay any insurance

claims submitted by Cohen – and Bankers thus accepted premiums for coverage that it has no intention of providing.

6.      For this and other reasons, Bankers has breached its insurance contract with Cohen, and demonstrated a lack of good faith in handling the Cohen claim.

## PARTIES

7.      Plaintiff is an individual citizen of the state of Maryland and maintain residences in Baltimore County, Maryland, including 1 Cooperfield Court, Phoenix, Maryland 21131 (the "Property").

8.      Defendant Bankers is an insurance company that, upon information and belief, maintains its principal place of business in Philadelphia, Pennsylvania and is incorporated under the laws of the State of Pennsylvania.  Bankers is engaged in the business of providing property and casualty insurance products and services throughout the United States, including the State of Maryland, to customers such as Plaintiff.  Bankers is an ACE Private Risk Services company and ACE has been handling the adjustment of the Plaintiff' Claim (hereinafter defined).  ACE is one of the world's largest property and casualty insurers.  With operations in 54 countries, ACE provides commercial and personal property and casualty insurance throughout the world, including in Maryland.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this case pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 1-501.

10.      This Court has jurisdiction over the Defendant pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-103.

11.     Venue in this Court is proper pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201.

## FACTUAL BACKGROUND

**A.      Plaintiff Purchases and Plans Renovations of the Property.**

12.     Plaintiff purchased the Property on or about May 2012.  Plaintiff purchased the Property "as is" and lived there for approximately 1.5 years.

13.     Prior to commencing the renovations, Plaintiff moved out of the Property to another home he owns.  Thus, at the time of the fire at issue, Plaintiff was not living at the Property and had limited personal property there.

**B.      Plaintiff Purchases Homeowner's Insurance Coverage for the Property from Bankers.**

14.     At all times relevant to this action, Plaintiff had a home insurance policy with Bankers, through ACE, policy number 268043117H (the "Policy").  *See* Policy, attached hereto as **Exhibit A**.

15.     The Policy insures the Property and covers, *inter alia*, fire losses to the Property.

16.     Specifically, the Policy covers up to $3,442,000.00 in replacement costs for a covered loss to the Property, as well as up to $1,443,000.00 in replacement costs for a covered loss to Plaintiff's personal property.

17.     At all times relevant hereto, Plaintiff consistently, and timely, paid all premiums owed to Bankers as required under the Policy.

**C.      A Fire in the Garage Causes Damage.**

18.     On or about October 6, 2013, a fire occurred in the Property's garage.  The fire department responded to the scene and extinguished the fire.

19.     As a result of the fire, there was damage (the "Loss") to the Property, as well as smoke and soot throughout the Property.  Because at the time of the fire Plaintiff had limited personal property located at the Property, the Loss is confined mostly to the costs to repair the Property.

20.     As a result of the Loss, Plaintiff filed a claim with Bankers, identified as Claim No. 77049710 (the "Claim"), on or about the same day that the fire occurred.

**D.      Bankers Sends an Adjustor to Visit the Property and Evaluate the Loss and Resulting Claim.**

21.     Bankers assigned first one, then another, and finally a third adjustor from ACE to the Claim—Corey Everett.

22.     On or about October 10, 2013, Mr. Everett visited the Property and met with Mr. Cohen.  Mr. Everett and Mr. Cohen walked through the Property and surveyed the damage thereto.

23.     At that meeting, Mr. Everett authorized a cleaning service to mitigate the soot and smoke damage.  Mr. Everett and Mr. Cohen also reached an agreement as to Defendant's coverage of certain personal property and coverage of certain lease obligations with regard to the Property.  An e-mail from Mr. Cohen to Mr. Everett memorializing this discussion is attached hereto as **Exhibit B**.

24.     Mr. Everett never responded to Mr. Cohen's e-mail memorializing their walk-through of the Property.

25.     On or about October 16, 2013, Mr. Everett sent Mr. Cohen an e-mail requesting to schedule a follow-up inspection to "check on the status of the mitigation efforts".  *See* E-mail at 2, attached hereto as **Exhibit C**.

26.    Mr. Cohen responded that either he or an agent of his would be present for the re-inspection.

27.    The re-inspection was a farce.  Instead of a follow-up inspection by Mr. Everett to check on the status of the mitigation efforts, an ACE Vice President of Claims and another unidentified ACE employee showed up, and reinvented the wheel by conducting a second "initial inspection" of the property.  *See* Ex. C at 1.

**E.    Defendant and its Counsel Make Patently Excessive and Unreasonable Demands of Plaintiff.**

28.    Defendants have not accused the Cohens of fraud, because they cannot support such a claim.  Rather, Defendants have implied that something, we do not yet know what, is amiss, and they are now bent on interrogating Cohen and his Wife in a fishing expedition with no reasonable basis  to support their premature conclusion.

29.    On October 25, 2013, ACE sent Plaintiff a letter merely intimating that Plaintiff set the fire himself.  The letter also demanded the production of a lengthy list of documents, none of which have anything to do with the cause of the fire:

- All documents, records, correspondence, reports, electronic documents, or other materials demonstrating the ownership, value, or condition of the Property, including, but not limited to, all deeds, title documents, insurance, purchase contracts, loan documents, first and secondary mortgage documents and applications, appraisals of the value of the property, and photographs that are descriptive of the condition of property immediately before the fire.

- An inventory of all personal property damaged by fire or smoke or by water in the course of extinguishing of the fire.  This inventory should describe the items damaged, list quantities, and include their value.

- Any documents, records, correspondence, reports, electronic documents, or other materials demonstrating the ownership, value, or condition of any personal property included in the claim or damaged in the fire, including all receipts, records of purchase, bills, invoices, price quotations, or photographs related to the personal property included in the Claim or damaged in the Fire;

- Any documents, records, correspondence, reports, electronic documents, or other materials that are related in any way to the cause of the fire.

- Any and all records related to the installation of burglary or fire alarms at the location, and/or video surveillance services.  Please include to the extent available documents that identify the installer and the alarm service company, including central station alarm service, together with any invoices for payment or for service charges through October 6, 2013.  Also please include copies of any surveillance recordings, alarm records, records related to maintenance or repairs of the alarm or surveillance system, or other documents related to fire or personal security at the property on or about October 6, 2013.

- Any documents, records, correspondence, reports, electronic documents, or other materials establishing your location on or about October 6, 2013.

- Any cell phone and home telephone statements showing outgoing and incoming calls for the months of September and October, 2013.

- All documents relating to your financial condition as of October, 2013, including statements and loan payment records from all of your banks, credit unions, and/or investment or brokerage companies; copies of statements from credit cards and/or invoices from credit cards, and statements related to car loans or car lease payments.  Include copies of your last and cumulative payroll statements for September 2013 and October 2013.

- If you use a personal financial program such as Quicken or QuickBooks to maintain your personal finances, please provide a copy of the data for the current year.  If you use an online financial application such as Mint.com, please provide hard copy printouts of your income and receipts for the past 12 months.  Also please provide printouts of your net worth as of October 6, 2013 and your check registers for the period from January 2013 through October 6, 2013.

- Your federal and state tax returns for the calendar years 2011 and 2012, including copies of your W-2 and any other forms documenting your income during those years.

- All documents related to your plan to renovate, rebuild, or modify the property prior to the fire, including architectural drawings or plans, applications for building permits and/or building permits, requests for proposals, quotes, bid documents, and/or contracts with architects, builders, contractors or subcontractors, whether executed or not executed, as well as any applications for construction loans or documents related to construction loans for the premises.

*See* October 25, 2013 Letter, attached hereto as **Exhibit D**.  It is clear from the October 25, Letter that Defendants intend to fight the Claim yet Defendants provide no support as to their reasoning to not pay the claim.

30.      In response to ACE's October 25 Letter, Mr. Cohen sent Defendants substantial personal financial information which plainly demonstrates a complete absence of financial motive to set this small fire: (a) his current mortgage statement for the Property showing that all payments are current, and (b) a screenshot of his bank account, showing a substantial amount of money.  Plaintiffs hoped that upon seeing Cohen's lack of a financial motive, Defendants would actually proceed with adjusting the fire Claim.

31.      Instead, Defendants hired an attorney.  On October 30, 2013,  Plaintiff received a letter from Alycen A. Moss, Esquire, with Cozen O'Connor.  *See* October 30, 2013 Letter, attached hereto as **Exhibit E**.

32.      In the October 30 Letter, counsel for Defendants reiterated the voluminous document requests and requested that Plaintiff and his Wife submit to separate Examinations Under Oath.

33.      Since the October 30 Letter, counsel for Bankers/ACE has demanded releases and authorizations from Cohen and his Wife permitting ACE to request the desired documents directly from the subject financial institutions or entities.  ACE's requests are patently excessive and overbroad.

### F.      Bankers Renews the Policy for Another Term.

34.      Even though Bankers/ACE has made it clear to Plaintiff that they will refuse to pay this Claim, they have renewed Plaintiff's coverage for another year, with the Policy term set to commence December 1, 2013.

35.     Bankers/ACE are willing to collect the Plaintiff's money as Plaintiff always pays the premiums, yet they are unwilling to honor the Policy as required.

## COUNT I

## BREACH OF CONTRACT

36.     Plaintiff hereby reaffirms and re-alleges the allegations set forth in Paragraphs 1-35 as if fully set forth herein.

37.     Plaintiff and Bankers entered into a fully enforceable and binding contract, the terms of which are definite and certain.

38.     The Policy constitutes a fair and equitable contract supported by adequate consideration.

39.     Plaintiff fully and properly performed all of the obligations under this contract by taking such actions including, but not limited to, remitting to Bankers all necessary insurance premium payments, timely notifying Bankers of the Loss, and reasonably complying with Defendants' requests for information and documents.

40.     Under the terms of the Policy, Bankers/ACE has a duty to provide the Plaintiff with insurance coverage for the Damage sustained to the Property.

41.     Bankers/ACE is refusing to provide the coverage required of them under the terms of the Policy unless the Plaintiff and his Wife submit to a thorough investigation into their finances.

42.     Moreover, in denying Plaintiff's Claim, Bankers/ACE has not only breached their obligations under the Policy, but has also breached their implied covenant of good faith and fair dealing embedded within that Policy.

43.     As a direct and proximate result of Defendants' breach of the Policy, Plaintiff has suffered damages including, but not limited to the following:

    a.    Expenses to repair the Damage to the Property;

    b.    Expenses to correct, repair, restore, or replace household goods, furnishings, and contents, as well as other personal property damaged; and

    c.    Loss of use of the Property.

WHEREFORE, Plaintiff is entitled to all damages caused by Defendants' breach of contractual duty, in an amount that exceeds Two Hundred Thousand Dollars ($200,000.00), as well as interest, costs, and any other relief deemed appropriate by the Court.

## COUNT II

### VIOLATION OF MD. CODE ANN., CTS. & JUD. PROC. § 3-1701
### LACK OF GOOD FAITH

44.     Plaintiff hereby reaffirms and re-alleges the allegations set forth in Paragraphs 1-43 as if fully set forth herein.

45.     Under the law, Defendants are required to adjust the Claim under the Policy in good faith, which includes either payment for the Loss or denial of the Claim.

46.     Defendants demonstrated a lack of good faith in holding the Claim open, refusing to pay the Claim, and demanding a mountain of irrelevant evidence from Plaintiff and his Wife, despite their clear intention to deny the Claim.

47.     As part of this unlawful scheme, Defendants have lacked good faith in delaying the adjustment and/or payment of the Cohen claim.

48.     To add insult to injury, Defendants renewed the Cohen Policy, and accepted substantial additional premiums, despite lacking any intent to pay any insurance claim that Cohen might make.

49.     Defendants' acceptance of the premiums constitutes the charge for insurance without any intention to provide coverage, in violation of multiple Maryland insurance statutes, including Section 3-1701.

WHEREFORE, Plaintiff is entitled to all damages caused by Defendants' bad faith, including expenses and litigation costs, and interest on those expenses or costs, in an amount to be determined at trial, as well as any other relief deemed appropriate by the Court.

Dated:  December 27, 2013                    Respectfully submitted,


By:

Jeffrey Cohen
Plaintiff Jeffrey Cohen, *pro se*.
2419 Long Ridge Rd
Reisterstown, MD 21136
Tel:    (443) 844-5068
Fax:    (443) 381-0274
jcohen@risk-works.com